JAMES B. MARTIN and MARION E. USILTON, as Administratrix, etc., of LEWIN H. USILTON, Deceased, Appellants, *v.* DiMARCO & REIMANN, INC., Respondent, Impleaded with the CITY OF NEW YORK and Others, Defendants.

First Department, June 5, 1942.

*Howard L. Kuttner*, for the appellants.

*Walter W. Westall* of counsel [*James E. Jones* with him on the brief], for the respondent.

TOWNLEY, J. The corporate defendant entered into a contract with the city of New York on July 26, 1929, for the construction of section 6 of the Rapid Transit Subway System at a price of approximately $6,700,000. On August 6, 1930, the corporate defendant entered into another contract for the construction of section 7 of the same subway at a price of about $2,700,000. The corporate defendant under separate contracts executed in July, 1929, employed the plaintiff Martin as its chief engineer and the plaintiff's intestate Usilton as deputy chief engineer in the construction of sections 6 and 7 of this subway.

The salary feature of the contracts reads as follows:

" (3-a) That the party of the first part shall pay to the party of the second part for his services as aforesaid [this referring to Martin] the sum of Twelve thousand ($12,000.00) dollars per year commencing on July 1, 1929 and to end at the completion of said contract, plus six (6%) per cent of the net profit of the said contract of the party of the first part which shall be determined as hereinafter provided. * * *

" (4) That the net profits of said business for the period above mentioned shall be determined by deducting from the earnings of the party of the first part all expenses of every and any nature, together with all salaries paid to the officers of the party of the first part, and any and all expenses incidental thereto. That said six (6%) per cent is payable to the party of the second part after the completion of the contract and the net profit ascertained, said officers' salaries not to exceed Two hundred thousand ($200,000) dollars."

In the month of September, 1930, this contract was extended to cover section 7 without any specified limitation as to officers' salaries. The two sections of the subway referred to were duly completed and the fixed salaries provided for by the contracts were paid.

The provision of the contracts requiring the payment of a percentage of the net profits has led to this action which is in the nature of an accounting as well as a foreclosure of the mechanics' liens. The referee treated the percentage portion of the plaintiffs' con-

tracts as necessitating an accounting of the profits and losses of the corporate business as a whole, rather than an accounting of the profits and losses properly chargeable to the particular contracts. He reported that there were no profits, but that the corporate defendant on the contrary had sustained a loss of $239,107.50. A motion was made to confirm the referee's report. The court properly disallowed disbursements totaling $32,978.69 claimed in the account and allowed by the referee. Other items totaling $189,702.17 were not passed on because the court found that a determination of these items was impossible upon the record before it. These items, however, were not referred back to the referee because the court found that even if all these disbursements were disallowed there would still be a loss of $16,426.64.

The basic question in this case is whether the additional compensation is to be ascertained by awarding six per cent of the net profit of the city contract or of the net profit resulting to the corporation from its entire corporate business. This was a corporation with general powers. During its lifetime it bid unsuccessfully on other contracts and it is obvious that it was contemplated that the corporation should do other business if it were able to procure it. The use of the words " said business " in paragraph " 4 " of the contract clearly refers to the business stated in the preceding paragraph (" 3-a ") and not to the general business of the corporation. This interpretation is borne out by the fact that it was necessary to have a further oral contract to enable the plaintiffs to participate in the profit of the city contract relating to section 7 of the subway project. This employment contract is not ambiguous.

A similar construction was put upon the contract in the interlocutory judgment. The corporate defendant therein was " directed and required to render to the plaintiffs a just and full account of all monies received and disbursed by it, and of all of its transactions in the prosecution and completion of its contracts with the defendant, The City of New York, for the construction of Route 106, Sections Nos. 6 and 7 * * *." There was no appeal from the interlocutory judgment and the law of the case is that the corporation must account for its net profits on these particular contracts and not on the total profit and loss account of the corporation.

This determination both on the natural analysis of the words of the contract as well as the law of the case leads to the conclusion that there must be a reversal of the judgment which is based on an erroneous construction of the contract. It is a great injustice to the plaintiffs who have clearly contracted for a share of the profits of a particular job to charge them with practically all the profits and losses of the corporation including its winding-up.

We cannot determine the correct amount on this appeal. The plaintiffs, however, have questioned numerous items allowed as proper disbursements by either the referee or the court. Some of the dispositions made by the court below are in our opinion erroneous. It is appropriate, therefore, to discuss some of the disputed items briefly to guide the referee upon the rehearing.

(1) The first question concerns the interest on bank loans. It was understood that these contracts would have to be financed to a large extent on borrowed money and that the interest charges would be a legitimate cost of the performance of the contracts. The plaintiff Martin, who prepared the bid sheets for the contracts, included therein an allowance for the estimated cost of such financing. This interest should be allowed.

(2) The purely corporate expenses amounting to about $12,000 should be disallowed for the reasons indicated above.

(3) The profits and losses resulting from the purchase and sale of municipal bonds deposited with the comptroller to secure the release of deferred payments should be eliminated from the account. The disposition of this matter in defendant's amended account was correct.

(4) The claimed difference between the amounts allowed for trucking payrolls and the amount stated in the further bill of particulars requires further explanation and must be relitigated before the referee.

(5) Officers' salaries: Under the first contract covering section 6 it was specifically agreed that the net profits should be determined by deducting " all salaries paid to the officers of the party of the first part, * * * said officers' salaries not to exceed Two hundred thousand ($200,000) dollars." Under this contract all salaries paid to officers up to $200,000 were a proper deduction and the actual compensation paid all officers was subject to this limitation. The contract contains nothing which makes the limitation applicable only to the salaries paid DiMarco and Reimann. The testimony indicates that while there was no limitation on the charge for officers' salaries in the second contract, it was agreed orally that such limitation should be arrived at by allowing that part of the $200,000 which the amount of the first contract bore to the amount of the second contract. If this testimony is found by the referee to express the real agreement of the parties, this question should be adjusted on that basis.

(6) The company was obliged to insure the lives of DiMarco and Reimann, individually, and deposited the policies as additional collateral for certain loans required in connection with the work. The premiums on these policies were a proper part of the cost of this financing and should be allowed as a disbursement.

(7) On this accounting there should be deducted as an expense the cost of all capital assets actually and totally consumed in the work plus a reasonable allowance for the depreciation of these capital assets which were still in existence when the construction contracts were completed. Even though Martin may have participated in conferences after the work was finished, in which it was suggested that the remaining equipment be sold at public auction, such participation did not indicate his consent that the proceeds of such sale should be accepted as the basis for determining the profit under the contract or his interest therein. The conferences were primarily held to determine the most efficient way of liquidating the remaining assets of a corporation after its officers had determined to dissolve and retire from business.

(8) There should be no deductions for the expenses of bidding on other jobs.

(9) The question of petty cash disbursements should be disposed of, *first*, by allowing all vouchers which were approved by either of the plaintiffs, and *second*, by allowing all expenditures which are supported by the names of the parties receiving the disbursements in accordance with the bill of particulars. Any duplication of items in the petty cash account and other accounts presents a question of fact for further litigation.

(10) The question of the item of $11,500 paid to an insurance company arising out of certain litigation should be determined by giving credit for the difference between the amount paid and $9,014.41, the amount of the judgment against Reimann personally, which at the time it was assigned to the defendant, was obviously collectible.

(11) The question of rental for machinery due DiMarco should be further litigated.

(12) The amount presently retained for contingent claims amounts to $24,086.40. This represents the face of the outstanding claims which remain unsettled after a period of nearly nine years. While a reasonable amount should be set up for the value of these stale claims, it is obvious that the defendant will be required to pay very little, if anything, upon them. A large reserve is, therefore, unjustified. The matter should be further investigated and a proper amount fixed depending on the probable present worth of the claims.

The other matters referred to in the opinion in the court below which were allowed without consideration will, of course, have to be relitigated.

The judgment and order so far as appealed from should be reversed, with costs to the appellants, and the matter remitted

to an official referee for determination of the account in accordance with the views expressed in this opinion.

MARTIN, P. J., and GLENNON, J., concur; DORE, J., dissents and votes to affirm; CALLAHAN, J., dissents in part.

CALLAHAN, J. (dissenting in part). I dissent from so much of the decision of this court as construes plaintiffs' contracts of employment so as to confine them to the two subway construction contracts in ascertaining profits and losses. There are ambiguities in the hiring agreements as to whether plaintiffs were to share thereunder in the defendant's corporate business generally, or only in the business done in connection with the two construction contracts awarded defendant. Considering all the evidence and the circumstances surrounding the parties, the decision of Special Term on this issue should be affirmed. The defendant DiMarco & Reimann, Inc., undoubtedly was incorporated primarily to carry out the first subway construction contract. The formation of a corporation with general powers is usual to serve such an end. That supplemental hiring agreements were entered into with plaintiffs when a second subway construction contract was awarded, is readily attributable to the necessity for new salary arrangements for corporate officers because of the limitation contained in the first agreement with respect thereto. When bids for proposed new jobs were submitted, plaintiffs were consulted about the same. Applying the rule of practical construction, the acts of the parties strongly support the decision of Special Term on the issue of construction of plaintiffs' contracts.

As a result of the foregoing views, I also dissent from this court's ruling that general corporate expenses and costs of bidding on other jobs should be disallowed upon this accounting.

I also dissent from so much of the decision of this court as holds that the prices obtained for machinery at auction do not properly fix the value of capital assets for the purpose of this accounting. The evidence warranted a finding that plaintiffs consented to this method of fixation of value. Otherwise, I concur in this court's determination to reverse the judgment and order a new trial.

Judgment and order, so far as appealed from, reversed, with costs to the appellants, and the matter remitted to an official referee for determination of the account in accordance with the views expressed in the prevailing opinion. Settle order on notice.