## (June 8, 1961)

■ JULES T. CATALANO, Respondent, v. J. C. MacELROY CO., INC., Appellant.

APPEAL (1) from a judgment of the Supreme Court in favor of plaintiff, entered June 21, 1960, in New York County, upon a verdict rendered at a Trial Term and (2) from an order, entered June 17, 1960, which denied a motion by defendant for an order to set aside the verdict and for a new trial.

*Per Curiam.* Defendant appeals from a judgment rendered after trial in favor of plaintiff in the sum of $9,606.80, and entered June 21, 1960. Defendant appeals also from an order entered June 17, 1960, denying its motion to set aside the verdict and grant a new trial. For convenience both appeals are considered together.

The plaintiff, formerly employed as a commission salesman by the defendant, a jobber in iron and steel products, brought an action to recover moneys allegedly due as a result of commissions earned.

The plaintiff, originally employed by defendant since 1947 or 1948, entered into an oral agreement in 1950, whereby he was to receive as commissions 50% of the net profits. Plaintiff asserts 50% of the net profits did not include credit losses, while defendant asserts that material costs, selling expenses, credit losses and fees connected with credit losses were to be deducted before 50% of the net profit could be determined.

Plaintiff voluntarily terminated his employment December 31, 1955. He testified that at that time he received a statement which charged him with 50% of the credit loss on an account which he had obtained in 1948, and which he serviced until 1953. This account began to "go bad" in late 1952 or early 1953, and in 1953 the company went into bankruptcy court, but the company was not adjudicated a bankrupt until 1955. Defendant's testimony was that the statement was not given until early in January, 1956, after their accountant made an audit of the preceding month's work, as was customary.

In February, 1955, counsel for defendant advised it that the account should be written off as a loss and that no dividends could be expected. In defendant company the fiscal year was the same as the calendar year.

Plaintiff testified that at the time he received the statement he protested the charge. This the defendant disputes. Be that as it may, the plaintiff from time to time thereafter, and up to some time in 1958, received statements and checks for commissions from accounts which had been his accounts while employed by the defendant. Plaintiff never, in writing or orally, rejected these statements or made claim for that portion of the credit loss charged

to him in the December, 1955 statement. His only dispute of the amounts (if such it could be termed) was in a letter dated June 6, 1957, when he questioned the balance due him as set forth in defendant's letter of June 4, 1957. In plaintiff's letter he wrote: "In your letter you stated that I have a balance of $1,272.62 due me. According to my figures this balance should be $1,450, plus or minus." Then followed the plaintiff's computation. The then difference asserted to exist was less than $200.

Plaintiff did acknowledge that in 1953 there had been a deduction of $20 for legal fees in connection with a delinquent account. He asserted that he protested and was assured that it would not happen again. Only two of plaintiff's accounts, including the one from which the present claim arose, were delinquent.

Both parties testified that the agreement was for 50% of the net profits. Commissions based upon net profits are in fact earned when a sale is consummated and payment made. The term "net profits" is construed to mean that sum remaining after deducting expenses incurred and losses sustained. The fact that plaintiff received his commissions, as a matter of business practice before the customers settled their account, is not determinative here.

While there was no error in rejecting evidence of the terms of employment of the defendant's other salesmen (*Lyon* v. *Relaxacizor Sales,* 11 A D 2d 1017), we conclude that the verdict was against the weight of the credible evidence.

The judgment appealed from should be reversed, on the law, the facts and in the exercise of discretion, and a new trial ordered, with costs to the appellant to abide the event.

Botein, P. J., Rabin, McNally, Stevens and Eager, JJ., concur.

Judgment and order unanimously reversed, on the law, on the facts and in the exercise of discretion, and a new trial ordered, with costs to the appellant to abide the event.