Howard B. PASHMAN, Plaintiff,

v.

CHEMTEX, INC., Defendant.

No. 85 Civ. 3489 (JMW).

United States District Court,
S.D. New York.

Feb. 23, 1987.

Philip Esterman, New York City, for plaintiff.

Wayne A. Cross, of Reboul, MacMurray, Hewitt, Maynard & Kristol, New York City, for defendant.

## MEMORANDUM AND ORDER

WALKER, District Judge:

### INTRODUCTION

The instant motions arise out of an action brought by Plaintiff Howard B. Pashman ("Pashman") for breach of an employment contract, under which Defendant Chemtex, Inc. ("Chemtex") allegedly promised to pay plaintiff a percentage commission on a sales contract which plaintiff helped defendant to procure. Defendant moves for both summary judgment on plaintiff's claim, and for sanctions, pursuant to 28 U.S.C. § 1927.

For the reasons set forth below, defendant's motion for summary judgment is granted. Defendant's motion for sanctions is denied.

### STATEMENT OF FACTS

Defendant Chemtex, a New York corporation, is involved in the business of selling plans and equipment necessary for the manufacture of various man-made fibers, films, resins, and paint. On July 12, 1977, Plaintiff Howard B. Pashman, the former owner of a paint company, negotiated an employment contract with John W. Bainton, a defendant salesman. In return for plaintiff's efforts to procure paint plant sales, defendant agreed, in a one-page contract, to compensate plaintiff as follows:

Your commission for these services will be a participation of ten (10) percent of the pretax profits on all sales made by you. A draw against this participation in

the amount of $3,500 per month will be paid to you monthly. Participation will be paid, net of draws, on the basis of 50% payable on contract effectuation and 50% payable on the acceptance of the plant by the customer.

In 1977, plaintiff met Adel Khalil, an Egyptian businessman, who expressed interest in establishing a paint production plant in Egypt. Plaintiff subsequently introduced Khalil to defendant's employees. In February 1978, Khalil agreed to purchase "equipment, formulae and technical services" from defendant for use in the construction of an Egyptian paint plant. Under the 1978 contract, an Egyptian corporation formed by defendant, Khalil, and a foreign businessman, Issa Nakhleh, would purchase Khalil's ownership interest in the paint plant.

This Egyptian Paint Project was the only sale which defendant obtained as a result of plaintiff's efforts. Plaintiff quit his employment with defendant in April 1981. At this time, he had received $162,750 in compensation from defendant.

In September 1981, defendant substantially enlarged the scope of the Egyptian Paint Project sold by plaintiff to Khalil. Specifically, defendant formed an Austrian subsidiary, Austria Chemtex, which joined with Khalil as a joint venturer with respect to the Egyptian Paint Project. Also, the sales price of the project was raised from the $7.6 million deal arranged by plaintiff to $10.1 million. Additional financing for the Egyptian Paint Project was provided by an Austrian bank. In 1983, the Egyptian Paint Project was refinanced for a second time.

On January 29, 1987, counsel for both parties appeared before this Court for oral argument on defendant's instant motions. At oral argument, defendant focused on an accounting statement attached to defendant's moving papers, which showed that, as of June 30, 1986, defendant had suffered losses of $722,520.10. Defendant asserted that its failure to earn any profit on the Egyptian Paint Project barred plaintiff's claim for employment commissions, and that plaintiff's failure to question any of the specific categories or amounts which defendant reported as costs justified court adoption of defendant's motion for summary judgment:

MR. CROSS [Defendant's Counsel]: The bottom line is they haven't come up with any suggestion ... that the categories are wrong [or] that the numbers are wrong.

We have satisfied our burden. We have come forward with a CPA and with a head of finance for our company to lay out the numbers. We have given them every piece of paper they asked for or they could ever ask for.

They haven't analyzed the data. They haven't put one piece of data in front of you saying the number for blueprints is wrong, it's not supported by the data.

In response to defendant's argument, plaintiff countered that none of the costs listed in the accounting statement related to the Egyptian Paint Project, and that plaintiff's commission should be based on the $10.1 million revenues that Chemtex received:

MR. ESTERMAN [Plaintiff's Counsel]: I think it's all profit, and I am going to explain to you why it's all profit. They chose the medium under which this is going to be decided.

. . . .

You are taking these costs and saying they are legitimate costs and they can be deducted.

THE COURT: If it's in effect a reduction of the purchase price, why isn't it just that.

MR. ESTERMAN: It isn't. They didn't even put money into that. The investment that they used was a profit also. They took the letter of credit, discounted the letter of credit, and put funds in that were part of the whole transaction.

In response, defendant's counsel again pointed to plaintiff's failure to challenge the specific categories and amounts listed by defendant as costs.

THE COURT: The only question [of material fact] might be whether or not the figures are accurate.

MR. CROSS: Your Honor, I concede that you could have a question of fact on that. The problem is the plaintiff on a motion for summary judgment has to come forward and make some showing. He can't simply say, "Let me stand up on trial and I will take a shot at it." He has had every general ledger, every bill of lading, every drawdown document, every invoice. Everything that we have in our company has been made available on two different occasions to them. They don't deny that.

They come in here and respond and say, "It isn't profit, it's sales revenue, and besides which I don't like the way their auditors put it together." They don't come in and say the number for equipment isn't supported by the invoices, there ... [are] only four invoices, not six. None of that. They could have. I concede to you they could have. I don't think they would have been successful but they could have made that attempt.

## DISCUSSION

*Defendant's Motion for Summary Judgment.*

Defendant moves for summary judgment on plaintiff's claim for breach of contract, seeking payment of past due wages in excess of the $162,000 already paid to plaintiff. Defendant argues that it has not earned any profit from the Egyptian Paint Project, and thus does not owe any commission payments to plaintiff. Plaintiff responds by arguing that his commission should be based on the revenues resulting from the Paint Project sale, rather than the profit earned by defendant after subtracting the cost of the project.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight*

*v. U.S. Fire Insurance Co.,* 804 F.2d 9, 12 (2d Cir.1986). In the instant case, this Court concludes that plaintiff has not established any genuine factual dispute as to the accuracy of defendant's accounting, which shows that defendant has suffered a loss on the Egyptian Paint Project and that defendant thus does not owe any commissions to plaintiff beyond the $162,000 plaintiff already has received.

Where a defendant promises an employee compensation not stated in any specific dollar figure, but instead calculated as a percentage of some abstract accounting term, such as "profits," the precise amount owed the employee often will raise a genuine dispute as to various material facts. *See Hawes Office Systems, Inc. v. Wang Laboratories, Inc.,* 537 F.Supp. 939, 945 & n. 4 (E.D.N.Y.1982); *Silver v. Gene K. Kolber Advertising, Inc.,* 518 F.Supp. 939, 944 (E.D.Pa.1981) (court looks to extrinsic evidence after holding that an employment agreement promising former salesman a commission equaling "50% of net" is ambiguous). However, use of term "profits" does not inherently result in ambiguity raising factual issues. *See Sarris v. Kuhn,* 111 A.D.2d 585, 489 N.Y.S.2d 650, 651 (3d Dep't 1985); *Tracz v. Shaffer,* 107 A.D.2d 869, 484 N.Y.S.2d 684, 685 (3d Dep't 1985). In short, the use of the words "profits" in an employment contract does not change the general rule that "mere conjecture or speculation by the party resisting summary judgment does not provide a basis upon which to deny the motion." *Quarles v. General Motors Corp.,* 758 F.2d 839, 840 (2d Cir.1985).

In the instant case, plaintiff has not even provided conjecture or speculation to challenge the accounting showing that defendant has gained no profit from the Egyptian Paint Project. Instead, plaintiff argues that the term "pretax profits," as used in plaintiff's employment contract with defendant, indicates that the parties intended to base plaintiff's commission on the revenues received by defendant from the Egyptian Paint Project, rather than the amount remaining after costs were subtracted from these revenues. However, as

a general rule, a court should not interpret the word "profits" as synonymous with "revenues," but should instead read the term "profits" as referring to "revenues minus costs." *See, e.g., Catalano v. J.C. MacElroy Co.*, 13 A.D.2d 914, 915, 215 N.Y.S.2d 873, 875 (1st Dep't 1961) ("The term 'net profits' is construed to mean that sum remaining after deducting expenses incurred and losses sustained."); *Martin v. City of New York*, 264 A.D. 234, 235–36, 35 N.Y.S.2d 182, 186–88 (1st Dep't 1942). Plaintiff has provided no evidence to show that a different meaning was intended when the parties used the term "pretax profits" in plaintiff's employment contract.

Accordingly, defendant's motion for summary judgment is granted.

*Defendant's Motion for Sanctions.*

Defendant seeks reimbursement from plaintiff for the expense incurred in taking the June 11, 1986 deposition of John W. Bainton, the defendant salesman who negotiated plaintiff's contract. Defendant argues that the Bainton deposition was necessary only because plaintiff had described the 10% commission payment in plaintiff's employment contract as based on the *sales price* of any project obtained by defendant, rather than on the *profit earned* by defendant from the project.

The Federal Rules authorize sanctions against "[a]ny attorney or other person ... who so multiplies the proceedings in any case to increase costs unreasonably and vexatiously." 28 U.S.C. § 1927. "The issue of allocation of [deposition] costs is directed to the court's discretion." *Melton v. McCormick*, 94 F.R.D. 344, 346 (W.D.N.Y.1982). However, "the general rule requires that a party seeking to take a deposition must bear the expense associated with taking the deposition." *Haymes v. Smith*, 73 F.R.D. 572, 575 (W.D.N.Y.1976).

In the instant case, defendant has failed to produce a sufficient justification for requiring plaintiff to pay the costs of the Bainton deposition, scheduled by defendant. Although this Court agrees with defendant's position that plaintiff has failed to raise sufficient fact issues to withstand summary judgment, defendant has

failed to show that plaintiff's counsel should have recognized the absence of such fact issues, or that plaintiff's deposition was scheduled and conducted primarily to inflate the discovery costs faced by defendant. In short, defendant has fallen short of showing the "unreasonable or vexatious" behavior on the part of plaintiff's counsel which would justify the imposition of sanctions. *See Quaker Chair Corp. v. Litton Business Systems, Inc.*, 71 F.R.D. 527, 535 (S.D.N.Y.1976).

## CONCLUSION

Defendant's motion for summary judgment is granted. Defendant's motion for sanctions is denied.

SO ORDERED.