**Alfred M. WALPERT**
v.
**Harry BART et al.**
**Civ. A. No. 17539.**

United States District Court
D. Maryland.
June 13, 1967.

---

Martin B. Greenfeld, Greenfeld & Greenfeld, Baltimore, Md., and Sidney B. Silverman, New York City, for plaintiff.

William L. Marbury, Decatur H. Miller, E. Stephen Derby, and Piper & Marbury,

Baltimore, Md., for defendants with exception of A. Lee Loomis, Jr.

Cahill, Gordon Reindel & Ohl, New York City, of counsel for defendant August Belmont.

NORTHROP, District Judge.

The complaint in this case arises out of the acquisition by Community Research & Development, Inc. (CRD) of all the issued and outstanding capital stock of James W. Rouse & Company, Inc. (JWR). The following facts are undisputed. JWR is a Maryland corration engaged in the mortgage banking business. Before its acquisition by CRD approximately 45% of its common stock was owned by James W. Rouse, its president, and the remainder of its stock was owned by other officers and employees of the company. CRD was also a Maryland corporation, engaged principally in the business of constructing and operating shopping centers. James W. Rouse was president of CRD. Since the formation of CRD it had operated under a management contract with JWR. The stock of CRD was publicly held and was traded in the over-the-counter market. On February 8, 1966, the boards of directors of CRD and JWR approved a plan of reorganization under which CRD would acquire JWR by exchanging shares of its common and preferred stock for all the outstanding stock of JWR. A special meeting of the holders of CRD common stock was called to be held on June 10, 1966, to consider the proposed acquisition. On May 21, 1966, a proxy statement was mailed to the stockholders of CRD containing information regarding the proposed acquisition. On June 10, 1966, the stockholders of CRD overwhelmingly approved the acquisition, and on June 20, 1966, the exchange of stock was consummated. JWR became a wholly owned subsidiary of CRD, and CRD changed its name to The Rouse Company.

On August 11, 1966, this action was brought by the holder of 100 shares of The Rouse Company's common stock against The Rouse Company, its directors and certain of its officers. The com-

plaint purports to state a derivative cause of action based upon Section 14(a) of the Securities Exchange Act of 1934 and Rule 14a–9 of the Securities and Exchange Commission. The complaint charges that the approval of the acquisition is null and void because it was based upon a false and misleading proxy statement. The court is asked to rescind the transaction and require the individual defendants to account to The Rouse Company for its losses.

All of the defendants, with the exception of A. Lee Loomis, Jr., who has not been served, move for summary judgment on the grounds that as a matter of law, because no genuine issue of material fact is raised, and/or because the case is barred by laches they are entitled to such judgment.

At this point, the court will review the evidence submitted to this court. Before considering the merits of the defendants' motion for summary judgment, this court must first rule on the defendants' motion to strike Sidney B. Silverman's affidavit of February 23, 1967, and the exhibits attached thereto. Mr. Silverman is the plaintiff's New York counsel. The defendants attack Silverman's affidavit on the grounds that it does not comply with Rule 56(e) of the Federal Rules of Civil Procedure because it is not made on personal knowledge and because it does not show affirmatively that the affiant is competent to testify to the matters stated therein. The defendants' motion to strike all of the exhibits attached to Mr. Silverman's affidavit, dated February 23, 1967, rests on the ground that the exhibits are not sworn or certified copies and that they would not be admissible into evidence.

Rule 56(e) of the Federal Rules of Civil Procedure in its pertinent parts reads as follows:

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of

all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith."

■ In his affidavit, Mr. Silverman says that he is fully familiar with the proceedings in this case. The affiant, however, has failed to set forth that he has personal knowledge of the things set forth in his affidavit and that he would be competent to testify to the matters stated therein. Therefore, the court has no other choice than to grant the defendants' motion to strike the affidavit of Mr. Silverman.

■ Mr. Silverman, in an affidavit dated April 5, 1967, attempts to save the exhibits attached to his first affidavit by certifying all of the exhibits, which were attached to his first affidavit, as true copies of documents obtained by him from public files and records. Thus for the purpose of the motion to strike the exhibits, the court accepts this belated certification. However, for the exhibits to be considered by the court, they must be attached to an affidavit which meets the requirements of Rule 56(e) because the second sentence refers only to those papers or exhibits mentioned in an affidavit. Inasmuch as the exhibits are attached to an affidavit that does not meet the requirements of Rule 56(e), they must fall. In order for the court to have considered these exhibits, they would have had to be attached to a person's affidavit through whom they could be admitted and be admissible into evidence. Therefore, the court grants the defendants' motion to strike the exhibits attached to Mr. Silverman's first affidavit.

■ Plaintiff's papers for the purpose of this motion consist of: (1) The verified complaint made upon information and belief and upon actual knowledge. However, the plaintiff has actual knowledge only that he owns 100 shares of The Rouse Company's common stock and has owned such shares continuously since May of 1961. Inasmuch as the complaint is verified, it will be regarded as an affidavit.

"It is clear that an affidavit made on information and belief cannot support on summary judgment the averments it attempts to uphold."

Schoenbaum v. Firstbrook et al., 268 F.Supp. 385 (S.D.N.Y.1967). See Automatic Radio Manufacturing Co., Inc. v. Hazeltine Research, Inc., 339 U.S. 827, 831, 70 S.Ct. 894, 896, 94 L.Ed. 1312 (1950); 6 Moore, Federal Practice ¶ 56.22[1] (2d ed. 1966). (2) An affidavit of the plaintiff, which is not contested by the defendants. (3) An affidavit of the plaintiff's New York counsel, which is dated April 5, 1967, submitted in opposition to the defendants' motion to strike Mr. Silverman's first affidavit and in support of plaintiff's application for discovery pursuant to Rule 56(f) of the Federal Rules of Civil Procedure.

In addition to the portion quoted above, Rule 56(e) provides further:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate shall be entered against him."

The plaintiff in this case has chosen to rely on the allegations in his complaint because none of the affidavits submitted by him or on his behalf set forth specific facts showing that there is a genuine issue of material fact in dispute. The plaintiff relies upon the hope that the defendants, as the moving party, have failed to meet the heavy burden placed upon them to show that no genuine issue of material fact is present. It is the court's understanding that both parties wished to go forward with the motion on the record as it now stands, without the submission of additional affidavits.

In contrast to the plaintiff's barrenness, the defendants have submitted affidavits of those defendants and others who would have knowledge of the events

to which plaintiff's allegations are directed. Defendants have complied with the mandate of Rule 56(e) and have produced impressive and numerous documents in the form of affidavits and exhibits attesting to their version of the facts.

Nevertheless, the movant has the task to show that there is no genuine issue of material fact for trial, 6 Moore, Federal Practice ¶ 56.15[3] (2d ed. 1966). The plaintiff contends that the defendants have failed to meet this heavy burden because the issue of credibility arises when the defendants attempt to support their position with their own affidavits. He alleges that inasmuch as several of his allegations can be proved only from documents held by and the testimony of the defendants, it would be inappropriate for the court to grant summary judgment. The plaintiff's contentions on the issue of credibility and access will be reached when the court discusses the plaintiff's second allegation.

As stated earlier, the plaintiff contends that the proxy statement is false and misleading; and as such it violates Section 14(a) of the Securities Exchange Act of 1934 (15 U.S.C. § 78n) and a regulation made pursuant thereto.

Section 14(a) of the Securities Exchange Act of 1934 (15 U.S.C. § 78n) provides:

"It shall be unlawful for any person, by the use of the mails or any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect to any security (other than an exempted security) registered pursuant to section 12 (78l) of this title."

The defendants admit that the common stock of CRD was and the common stock of The Rouse Company is registered pursuant to Section 12 (15 U.S.C. § 78l) of the Securities Exchange Act.

Under its powers to issue regulations pursuant to the above statute, the Securities and Exchange Commission laid down in Rule 14a–9 (17 C.F.R. § 240.14a–9) that

"(a) No solicitation subject to this regulation shall be made by means of any proxy statement * * * containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact necessary in order to make the statements therein not false or misleading. * * *"

A fact is "material" under Rules 14a–9 if its misstatement or its omission would influence a stockholder's vote, Evans v. Armour & Co., 241 F.Supp. 705 (E.D.Pa.1965).

In considering this motion for summary judgment, the court keeps in mind that the statute involved is a remedial statute, which was passed to protect the stockholder. In addition to this special consideration, the court keeps before it the general principle that summary judgment may be granted only where there does not exist a genuine and material factual issue to be determined and where the movant is entitled as a matter of law to judgment, 6 Moore, Federal Practice ¶ 56.15 (2d ed. 1966).

"[T]he party opposing a motion for summary judgment is entitled to all favorable inferences which can be drawn from the evidence." Cram v. Sun Insurance Office, Ltd., 375 F.2d 670 (4th Cir. 1967).

The plaintiff first contends that the proxy statement is false and misleading because the formula, which JWR corporation used to repurchase its common stock, was not set forth and because the repurchase price of the preferred stock of JWR was not stated in the proxy.

According to paragraph (d) on page 2 of the proxy statement, the repurchase price of the JWR common stock as worked out by the formula was stated

to be $180.00. In the same paragraph, the stockholders of CRD are told that the value of the stock of The Rouse Company to be given in exchange for one share of JWR common stock is $364.27, in other words a little over twice the repurchase price. No case has been cited to show that this information should have been set forth. It is not disputed that JWR was a closely held corporation and that the formula, by which JWR common stock would be repurchased, was designed to keep it a closely held corporation. That JWR was a closely held corporation and that the stock of JWR could not be freely sold was stated in paragraph (c) on page 2 of the proxy statement. Thus, the court holds as a matter of law in this situation that the failure to set forth the repurchase formula was not misleading. The salient facts, which should be presented and which were presented in the proxy statement, are the repurchase price of the common stock under the formula and the difference in that price and the value of the stock to be traded.

■ Under his first allegation, the plaintiff further contends that the failure to list the repurchase price for JWR's preferred stock makes the proxy statement false and misleading. The redemption price of preferred stock is determined under a contract, the pertinent parts of which are generally embodied in the stock certificate, between the corporation and the shareholder. Generally, the repurchase or redemption price of cumulative preferred stock is at least the par value stated in the stock certificate and any of the cumulative dividends which have not been paid. When the redemption or repurchase price is the par value of the stock, it is immaterial whether the repurchase price is set forth in the proxy statement if the par value is set forth therein because it could be reasonably assumed that the repurchase price of the cumulative preferred stock would at least be the par value and any of the

cumulative dividends. The par value of the JWR preferred stock was set forth on page 31 of the proxy statement. In his affidavit and the exhibits attached thereto, Mr. Rouse stated that the repurchase price of the preferred stock was the par value of the stock.[1] If the repurchase or redemption price would have been set forth under these circumstances, how could it possibly have influenced the vote of a CRD stockholder? In this transaction, the preferred stock was traded par for par. There is no doubt that if the repurchase price for JWR preferred stock was less than par, its repurchase price would have been material. But this was not the case. Therefore, the court finds that the failure to set forth the repurchase price of the JWR preferred stock is immaterial under this set of facts.

The plaintiff's second allegation why this proxy statement is false and misleading is that the special committee, which negotiated the acquisition of JWR on behalf of CRD, did not faithfully discharge its responsibilities when it recommended a price for the JWR common stock that was more than two times its repurchase price. When one reads paragraph (a) on page 2 and "Negotiation of Exchange" on page 6 and 7 of the proxy statement, one assumes that the special committee which recommended the exchange was acting independently. The plaintiff contends that this committee could not have been acting independently when it recommended for the JWR common stock a price that was more than two times its repurchase price. Thus, the plaintiff contends that it was misleading and false to give an impression that the committee was acting independently.

The defendants attempt to show that no genuine issue of material fact is raised as to the independence of the committee through the affidavits of Calvin E. Donnelly, J. W. Rouse, and Samuel E. Neel,

1. On page 2 of the first exhibit attached to Mr. Rouse's affidavit is a statement that the repurchase price of the preferred stock was to include the accrued unpaid dividends. Evidently there were no accrued unpaid dividends. This, however, is immaterial.

defendants in this case. The plaintiff contends that these affidavits are insufficient to show that the committee acted independently because the court would have to determine the issue of the affiants' credibility.

The Supreme Court in Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, at 628, 64 S.Ct. 724, at 729, 88 L.Ed. 967 (1941), said that

"the mere fact that the witness is interested in the result of the suit is deemed sufficient to require the credibility of his testimony to be submitted to the jury as a question of fact."

The Court, however, did not base its reversal of the summary judgment granted therein for the defendant solely on the ground that the facts considered by the lower courts were from affidavits of the officers and employees of the defendant corporation. Rather, the Court said that the affidavits of interested experts were only evidentiary and not conclusive. This court does not believe that the Court in *Sartor* meant to restrict the summary judgment procedure by saying that no summary judgment could be granted if the affidavits of the interested parties are the only ones presented to the court. 6 Moore, Federal Practice ¶ 56.15[4] (2d ed. 1966). Rather, the court interprets *Sartor* to mean that when the affiant is interested in the outcome of the case, an issue of credibility might arise.

In order for the plaintiff to succeed, he must produce by way of affidavit or otherwise sufficient evidence to show the court that at trial he will be able to produce some fact to shake the credibility of the affiants. Mere hopes are not enough. Orvis v. Brickman, 95 F.Supp. 605, at 607 (D.D.C.1951), aff'd 90 U.S.App.D.C. 266, 196 F.2d 762 (1952); Radio City Music Hall Corp. v. United States, 135 F.2d 715 (2d Cir. 1943); and 6 Moore, Federal Practice ¶ 56.15[4] (2d ed. 1966). In Radio City Music Hall Corp. v. United States, supra, at 718, the court said:

"When a party presents evidence on which, taken by itself, it would be entitled to a directed verdict if believed, and which the opposite party does not discredit as dishonest, it rests upon that party at least to specify some opposing evidence which it can adduce and which will change the result."

The plaintiff contends that he must prove the allegation as to the special committee's thoroughness through documents which are solely within the defendants' possession or through shaking the affiants' credibility. The court finds this contention to be without merit. At the time that the plaintiff responded to the defendants' motion for summary judgment, he had within his hands the repurchase formula for JWR's common stock. The plaintiff could have obtained the affidavit of an expert to state that after considering the repurchase formula and the price suggested by the special committee to be paid for the stock, the special committee could not have been acting independently. However, the plaintiff's counsel did not do this. Had the plaintiff done this, then not only would he have put the issue of the credibility of the affiants for the defendants to support their position in question, but he would have raised a genuine issue of material fact for trial. Further, if the only way that the plaintiff could have proved his second allegation was through the testimony of the defendants, then the court would have felt constrained to find that a genuine issue of material fact, namely the credibility of the defendants, had been raised. But the court has just indicated that the plaintiff had other methods through which to prove his second allegation. Therefore, the court must accept the affidavits of Rouse, Donnelly, and Neel as to the issue of the special committee's independence as true.

A succinct recitation of the facts as they appear in the affidavits of Neel, Donnelly, and Rouse shows that the committee which studied the proposed acquisition of JWR stock, was composed of those directors which had no financial interest in JWR. (Neel's affidavit,

paragraph 2; and Rouse's affidavit, paragraph 5.) The special committee of the CRD board was appointed to consider acquisitions of other companies. (Rouse's affidavit, paragraph 5; and Neel's affidavit, paragraph 3.) It is further to be noted that Rouse was not at first in favor of the acquisition (Rouse affidavit, paragraph 5) whereas the ones who were the driving force behind the acquisition owned approximately twenty-two per cent of the common stock of CRD (Donnelly's affidavit, paragraph 2). Further, this committee sought out the advice of several investment firms to insure its fairness to CRD (Neel's affidavit, paragraph 4). From these facts, which are not contradicted by the plaintiff, the court finds that no genuine issue of a material fact has been raised as to the independence of this group. Having failed to raise a genuine issue as to the independence of the committee, the court must find that the statements concerning the committee are true and are not misleading.

■■■ The plaintiff's third contention why the proxy statement is false and misleading is that the book value of CRD's common stock was listed as $2.16 (Proxy Statement, page 3, paragraph (h)), but it failed to state that JWR listed the value of the stock in its own financial report at $10.00 per share. Under this allegation the complainant has failed to state a cause of action upon which relief can be granted because he has failed to allege that JWR listed the *book value* of CRD's common stock at $10.00 per share. The JWR listing of the stock could have been book or market value. There could be at most a false or misleading statement if the plaintiff had alleged that the proxy statement failed to state that JWR listed the *book value* of CRD's common stock at $10.00 per share. Therefore, the court hereby finds in favor of the defendants as to the plaintiff's third allegation.

Mr. Walpert next contends that the proxy statement is false and misleading because it failed to call attention to CRD's substantial cash flow and thus led one to believe that a company (CRD)

with a constant deficit in net earnings was being merged with a company (JWR) which had for the most part a constant surplus in net earnings. Plaintiff contends that the "bookkeeping deduction" for depreciation and amortization should have been set down separately so as to show CRD's cash flow. If this had been done, then the laymen with no understanding of accounting would have had a better comprehension of the transaction.

■■■ In Shvetz v. Industrial Rayon Corporation, 212 F.Supp. 308, at 310 (S.D.N.Y.1960), the court said:

"While it might be true that a person of limited education or nonfamiliarity with corporate finances and legal matters would find it difficult to understand many of the facts of the proposed merger [the plaintiff therein did not understand accounting], that is not the test. The statute requires the absence of false and misleading statements, as do the S.E.C. rules. Nowhere does either require that corporate reorganizations and mergers be explained in language comprehensible to school children."

The defendants through the affidavit of Andre W. Brewster, not a defendant herein, state that they intended to set forth the cash flow theory as the plaintiff contends it should have been set forth, but that the Securities and Exchange Commission said that this was improper. (Affidavit of Andre W. Brewster dated March 29, 1967.) It would be improper for this court to disagree with the Securities and Exchange Commission's recommendation. In view of their recommendation, the Court rules that as a matter of law, the failure to set forth the cash flow of CRD is not misleading.

■■■ The plaintiff's fifth contention is based upon the failure of the proxy statement to mention the effect of a tight money market on JWR's earnings. The plaintiff contends that this failure was misleading because the proxy could lead one to believe that the substantial increase in the net income of JWR for

fiscal 1965 would continue. The plaintiff says that the facts would show that the substantial increase in the net income of JWR for fiscal 1965 was due solely to its having obtained one large mortgage in 1965. Because of the tight money market, the plaintiff contends that JWR would have small prospects of obtaining a mortgage of similar magnitude as long as the tight money market lasted. Through the affidavits of Smith, a disinterested party, and of Silloway, the treasurer of JWR (but no party defendant), the defendants show that this large mortgage was responsible for about one-sixth of the increase in the net earnings of JWR for fiscal 1965. The defendants through the affidavit of Silloway, show that the total fee of the mortgage in question was to be paid over a period of years. The plaintiff in no way has supplied the court with any information to contest these facts. The defendants have shown conclusively that the allegation that the net income for fiscal 1965 was due solely to one large mortgage obtained by JWR is without foundation. No genuine issue of material fact is presented for trial under this allegation.

Plaintiff further contends that the failure to set forth the effect of tight money on the mortgage market was misleading because the substantial increase in net income of JWR for fiscal 1965 would not be as substantial during future years if the tight money market continued. Thus, the CRD stockholder was misled in believing that JWR would continue to have a growth rate of the same magnitude. This contention is without merit. Information about the effect of tight money on the mortgage market is equally available to both parties. Information which is equally available to both parties, such as the current market quotation for a stock, is not required to be disclosed. Hafner v. For-

est Laboratories, Inc., 345 F.2d 167 (2d Cir. 1965). Inasmuch as the money market, especially that segment concerning mortgages, is so subjected today to the whims and caprices of the government, the most that the defendants could have put in the proxy statement concerning tight money would have been a theoretical discussion, which probably would not have been as adequate as a similar discussion in an economics book, and a very vague statement as to future income. Neither party knew the duration of the tight money market. Had the proxy statement been too specific as to the effects of tight money on future income, the defendants might well have been accused of speculating. In the note appended to Rule 14a–9 (17 C.F.R. § 240.14a–9), the Securities and Exchange Commission said:

> "The following are some examples of what, depending upon particular facts and circumstances, may be misleading within the meaning of this section: (a) predictions as to specific future market values, earnings, or dividends."

Inasmuch as the information about the effect of the tight money market was equally available to the plaintiff as to the defendants, if the former had only looked, and inasmuch as the defendants would have been walking a tightrope between what would be permissible and what would be speculating had they enclosed a statement concerning tight money or the future earnings of JWR, the court holds that under these circumstances a discussion about the effect of tight money did not need to be disclosed. Thus, the plaintiff has failed to state in his fifth contention a ground upon which relief could be granted by this court or has failed to show the presence of a dispute over a genuine issue of a material fact for trial.[2]

2. Attached to Mr. Silverman's second affidavit is the INTERIM REPORT TO STOCKHOLDERS of The Rouse Company. In it, the president does make a prediction as to the impact in the future on the money market on The Rouse Company's business. But it should be noted that a proxy statement and an Interim Report to Stockholders serve different purposes and that of the two reports, only the proxy statement must be prepared in accordance with S.E.C. forms. Both, however, must be truthful. In the Interim Report, the court has not

The plaintiff's sixth contention is that the investigation by Eastman Dillon Union Securities & Co. (hereinafter cited as Eastman Dillon) was not thorough and searching because Eastman Dillon approved a value on JWR's common stock of more than twice what the shareholders of JWR placed upon it. The plaintiff stated at the hearing that there could be no cause of action against the defendants as to the findings of Eastman Dillon. Rather the cause of action is that the defendants allowed the result of the findings of Eastman Dillon to be listed when the defendants knew that the report was not the result of a full and thorough study. By indicating in the proxy statement that the Eastman Dillon report was a full and thorough study, the defendant made a false and misleading statement. In support of their contention that the report was a full and thorough study of the acquisition, the defendants have submitted the affidavit of John T. Booth, a general partner of Eastman Dillon. Attached to the affidavit is the report made by Eastman Dillon. Eastman Dillon was aware of the stock purchase agreements of JWR. (Booth affidavit, paragraph 9.) At the hearing the plaintiff attempted to discredit the report. However, he failed to do so in the proper manner as required by Rule 56(e). The plaintiff had the report made by Eastman Dillon before it answered the defendants' motion for summary judgment. The plaintiff could have submitted an affidavit of an expert to show that the report was not a full and thorough study. The plaintiff's counsel attempted to do this on the day of the hearing. If he could do it, he could have submitted an affidavit by an expert. Having failed to support his position in the proper manner, the court must accept the affidavit of Mr. Booth as unchallenged.

The court has studied the report in light of the issues of fact that the plaintiff's counsel at the hearing attempted to show existed in order to give the plaintiff every benefit of any doubt and find them to be without merit and to raise no genuine issue of material fact for trial. Thus under the plaintiff's sixth contention the court finds that no genuine issue of material fact for trial is present.

Inasmuch as the defendants have shown that either there is no genuine issue of material fact for trial or that the plaintiff's contentions do not state a cause of action, the court could grant the defendants' motion for summary judgment at this juncture for they are entitled to judgment as a matter of law. However, it refuses to grant the motion solely on these grounds because the court finds that the plaintiff's case is also barred by laches.

At present there are no cases in which the defense of laches has been recognized in an action to set aside a transaction because of a false and misleading proxy statement. There is on the other hand no expression of congressional intent to exclude the traditional defense of laches. See Royal Air Properties, Inc. v. Smith, 312 F.2d 210 (9th Cir. 1962). *Smith* was a case under Rule 10b–5 of the Securities and Exchange Commission. However, the considerations in applying the doctrine of laches there also apply here. Under Rule 10b–5, it is unlawful to make an untrue statement of material fact or to omit to state a material fact in order to sell or purchase a controlled security. Under 14a–9, it is unlawful to do the same thing in a proxy statement.

The Court in J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964) held that the court could set aside a consummated transaction in an appropriate case when the transaction had been brought about by a proxy statement, which was issued in violation of Rule 14a–9, because the purpose of the Act was to protect investors. However, the Court did not instruct

"the federal courts to set aside a corporate transaction or election whenever

---

had its attention directed to any regulation that the president of the company cannot state what he hopes for the future.

Whether such a statement would have been illegal in a proxy statement is not decided today.

the solicitation of proxies for a shareholder vote violates one of the proxy rules. Retrospective remedies of this nature are within the discretion of a court of equity and should be granted only upon a showing of extraordinary circumstances."

Note, Supreme Court, 1963 Term, 78 Harv.L.Rev. 179, at 298–99 (1964).

The doctrine of laches is applicable only when one has knowledge of his rights, but he refuses to take the necessary steps to enforce them

> "until the other party has in good faith so changed his position that he cannot be restored to his former state if the right is enforced."

Brune, Maryland Corporation Law and Practice § 357, at p. 425 (Rev. ed. 1953). See Central Ry. Signal Co. v. Longden, 194 F.2d 310 (7th Cir. 1952).

On May 21, 1966, the proxy statement was mailed to CRD stockholders. On June 10, 1966, the CRD stockholders overwhelmingly approved the acquisition. On June 20, 1966, the exchange of stock was consummated. Since that date the stock of The Rouse Company has been sold on the open market. Not until August 11, 1966, when this suit was filed, did the plaintiff inform CRD that he disapproved this transaction. (Rouse's affidavit, paragraph 8.) Mr. Walpert does not deny by way of affidavit that the statement of Mr. Rouse is incorrect. Thus, Mr. Walpert never voted his shares of stock. In his affidavit (paragraph 2), Mr. Walpert said that he disapproved of the exchange provided that the proxy statement fully disclosed all pertinent terms of the exchange. In paragraph 3 of his affidavit, the plaintiff stated that he hired Mr. Silverman, his New York counsel in the present action, to see if the proxy statement conformed to the law. He does not say when he hired Mr. Silverman. Yet, the plaintiff was well enough aware that the transaction could be set aside if the proxy statement failed to conform to the law. Early in July, the plaintiff learned that Mr. Silverman was

of the opinion that the proxy statement did not conform with the law. His verified complaint was signed July 5, 1966. Yet he never informed the directors of The Rouse Company. Thus, the stock of The Rouse Company continued to be sold on the open market.

Laches is appropriate here for two reasons. First, the plaintiff should have at least let CRD know that he opposed the merger and that he was having the proxy statement studied for its legality. But even more important than that, he should have informed The Rouse Company as soon as he planned to take legal action rather than waiting until he took it. The plaintiff by refusing to do this has lulled third parties, who have purchased the stock on the open market, into thinking that the action would not be contested. Further he has allowed The Rouse Company to undertake a course of action that would be exceedingly difficult to untangle. Had the plaintiff shown enough interest to voice his disapproval of the transaction before it was consummated or had he let The Rouse Company and the public know that he planned to pursue legal action immediately after he heard from Mr. Silverman, the court would feel constrained to hold that the defense of laches was not applicable. But the plaintiff did neither of these things. Therefore, the court holds that the plaintiff's complaint in that it asked for equitable relief only (an accounting by the defendants to CRD and a rescission of the transaction) is barred by laches.

Plaintiff has requested that it be allowed to have further discovery under Rule 56(f) of the Federal Rules of Civil Procedure so that he could make out a case against the defendants. Inasmuch as his claim is barred by laches, such discovery would be useless.

It is therefore this 13th day of June, 1967, ordered that the defendants' motion for summary judgment be and the same hereby is granted for the reasons set forth above.