**QUAKER CHAIR CORPORATION,**
**Plaintiff,**

v.

**LITTON BUSINESS SYSTEMS,**
**INC., Defendant.**

**No. 73 Civ. 1259.**

United States District Court,
S. D. New York.

June 16, 1976.

Hubbell, Cohen & Stiefel by Maurice B. Stiefel, Lawrence B. Kurland, New York City, for plaintiff.

Morgan, Finnegan, Pine, Foley & Lee by John A. Diaz, Robert E. Paulson, New York City, for defendant.

## MEMORANDUM OPINION

MOTLEY, District Judge.

The defendant in this patent infringement action has moved for summary judgment, pursuant to Rule 56, Fed.R.Civ.P., on the ground that plaintiff's allegedly infringed patent, United States Design Patent D–223,046, is invalid for obviousness. 35 U.S.C. § 103. Defendant argues that plaintiff's patented L-shaped desk and return was anticipated both by its own "Group 45" desk series and by a patent issued to one S. W. Golden prior to the time that plaintiff obtained its patent. Moreover, it argues that the sole feature distinguishing plaintiff's desk design from its

own pieces of desk furniture in the prior art is obvious as a matter of law, on the authority of *Mallinson v. Ryan*, 242 F. 951, 952 (S.D.N.Y.1917). Annexed to defendant's motion papers are diagrammatic illustrations of plaintiff's patented design, photographs of its own "Group 45" desk, and diagrammatic illustrations of the Golden patent.

Rather than immediately submitting papers in opposition to defendant's motion, plaintiff noticed the deposition of three employees or former employees of defendant, in order to obtain information which it felt was relevant to its opposition. Defendant then moved to vacate the notices of deposition, pursuant to Rule 26(c), Fed.R.Civ.P. When defendant refused to stipulate to further adjournments of the return date of its summary judgment motion, plaintiff moved for a continuance of the motion, pursuant to Rule 56(f), Fed.R.Civ.P. This application was opposed by defendant. Finally, some weeks later, plaintiff noticed the deposition of the Examiner in the United States Patent Office who had considered plaintiff's patent application, and defendant then moved to vacate this notice as well. These various motions will be treated separately.

*The Schneiderman-Tischio-Silver Depositions*

Plaintiff contends that it is entitled to take the depositions of Messrs. Alvin Schneiderman, Bertram S. Silver, and John M. Tischio, all of whom are either employees or former employees of defendant, principally to obtain evidence concerning (1) the extent of and basis for any commercial success enjoyed by defendant's allegedly infringing desk, and (2) any actual copying of plaintiff's patented design by defendant. Plaintiff argues on the authority of *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), *Lancaster Colony Corp. v. Aldon Accessories Ltd.*, 506 F.2d 1197, 1199 (2d Cir. 1974), and other federal cases, that evidence concerning commercial success and copying is relevant to a determination of the obviousness of its design.

In rejoinder, defendant argues that evidence of copying or commercial success is irrelevant to a determination of its motion for summary judgment. It urges that, while such evidence and other "secondary" indicia of obviousness might have some bearing in a case in which the question of obviousness was a close one, the patented design in this case is so clearly obvious in the face of prior art that the court need not receive evidence of commercial success and copying. *G. B. Lewis Company v. Gould Products, Inc.*, 436 F.2d 1176, 1179 (2d Cir. 1971). Thus, it argues, since the court need not consider such evidence in this case, the evidence is irrelevant. Moreover, defendant argues, it has, by letter, already stipulated "the issue of commercial success" and the fact "that defendant made and sold each of the accused desks after the date of the grant of the design patent in suit and prior to the date of the commencement of this lawsuit." Finally, defendant notes that the principal designer of its accused desk has, by affidavit, already categorically denied that he copied plaintiff's patented desk, and it argues that that assertion is conclusive of the copying question. In sum, it argues, the taking of the noticed depositions "would constitute an undue and completely unnecessary expense and burden."

Rule 26(b)(1) provides, in pertinent part, that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." A party may obtain an order barring such discovery only "for good cause shown." Rule 26(c).

The central question raised by defendant's motion to vacate the notices of deposition is whether the information sought by plaintiff is "relevant" to the subject matter of this suit, i. e., the alleged infringement of plaintiff's patent. It is clear, both from the language of the Rule itself, and also from the construction placed

upon it by the courts, that the concept of relevance for discovery purposes is not limited by considerations of evidentiary admissibility at trial, but is interpreted broadly to afford the parties liberal access to evidence in advance of trial. *See, generally, General Telephone & Electronics Laboratories, Inc. v. National Video Corp.*, 297 F.Supp. 981, 984 (N.D.Ill.1968); *Cox v. E. I. DuPont de Nemours and Company*, 38 F.R.D. 396, 398 (D.C.S.C.1965). *See also* Notes of the Advisory Committee on the 1970 Amendments to the Fed.R.Civ.P. ("Since decisions as to relevance to the subject matter of the action are made for discovery purposes well in advance of trial, a flexible treatment of relevance is required and the making of discovery, whether voluntary or under court order, is not a concession or determination of relevance for purposes of trial.") Thus, in the absence of some very clear showing by defendant that the material sought to be discovered by plaintiff has no bearing on the issues raised in this action, it appears that plaintiff is entitled to proceed with the depositions which it seeks.

At the outset, it should be noted that defendant has cited no authority squarely holding that evidence of copying or commercial success is *irrelevant* even in cases where the purported innovation of a patent appears obvious to a layman when it is compared with the prior art. It is true that the Supreme Court in *John Deere* merely noted that inquiries into such "secondary considerations" "*may have relevancy.*" 383 U.S. at 18, 86 S.Ct. 684 (emphasis added). However, those decisions relied upon by defendant have merely indicated that a trial judge has considerable discretion in refusing to hear expert testimony or to take other evidence bearing on secondary considerations when he is presented with the question whether a patent is void for obviousness. Such cases appear to establish a proposition which is now codified in more

general fashion in Rule 403 of the Federal Rules of Evidence. ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by . . considerations of undue delay, waste of time, or needless presentation of cumulative evidence.") They do not hold that evidence of, e. g., commercial success or copying, is *irrelevant* at trial or for purposes of a summary judgment determination. *A fortiori*, they do not establish that it is not discoverable under the broader standards of "relevancy" which form the parameters of pretrial discovery.

Since the material which plaintiff seeks to discover is relevant to the subject matter of this suit, defendant is entitled to a protective order vacating the notice of deposition only if it can show "good cause". In the court's view, it has failed to make such a showing. There has, as yet, been no discovery in this case, although there has been discovery in a companion case between the parties involving different designs. Beyond its assertions concerning the irrelevancy of the evidence sought, defendant's opposition rests merely upon the asserted futility of further discovery in view of its stipulation and the sworn denial of copying by its former president. However, these contentions are without merit. The simple stipulation of "the issue of commercial success" is clearly of limited utility to plaintiff in this posture of the case. The question is not *whether* defendant's accused design was successful, but *why*; that is, was the success attributable to design features similar to those of the patent in suit, such as to indicate that those features were readily distinguishable from the prior art in the eyes of a consuming public. Moreover, the suggestion that the designer's denial of copying definitively precludes further inquiry into allegations of design piracy finds no support in either reason or authority.[1]

---

1. Defendant's suggestion, purportedly based upon *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964), and *Compco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964), that copying of an unpatented or unpat-

entable article has no bearing on the question of obviousness of the patent, is totally without merit. As a legal proposition, anyone may, of course, copy an article which is either unpatented or the subject of an invalid patent, without liability for infringement. However, the

It is precisely for the purpose of testing the truth of such statements that the opportunity for live cross-examination is provided. Particularly since plaintiff's discovery in the companion case has obtained testimony which is susceptible of an inference of direct copying, the court is unwilling to deny plaintiff similar discovery in this case.

For all the above reasons, it seems inappropriate to deny plaintiff the opportunity to depose Messrs. Schneiderman, Tischio, and Silver. Defendant's motion to vacate the notices of their deposition is, therefore, denied.

### The Dunkins Deposition

As previously indicated, plaintiff also noticed the deposition of Bruce W. Dunkins, the Examiner in the United States Patent Office who considered plaintiff's application for the patent here in suit. Defendant has moved to vacate this notice.

Plaintiff's desire to depose Examiner Dunkins stems from its intention to rely, in part, upon the legal proposition established by, inter alia, Georgia-Pacific Corp. v. U. S. Plywood Corp., 258 F.2d 124, 132–33 (2d Cir. 1958), cert. den., 358 U.S. 884, 79 S.Ct. 124, 3 L.Ed.2d 112 (1958); Metal Film v. Metlon Corp., 316 F.Supp. 96, 101 (S.D.N.Y.1970). Those cases indicated that the presumption of validity which attends action by the Patent Office is strengthened where it is shown that the Patent Examiner considered the most relevant prior art during his examination of the application for the patent in suit.

In this case, plaintiff is desirous of making clear that Examiner Dunkins had before him photographs and other material concerning defendant's "Group 45" desk (which defendant considers to be relevant prior art) during his consideration of plaintiff's patent application. While plaintiff's counsel had mailed to the Examiner, prior to the patent grant, a letter to which the "Group 45" materials were attached, a subsequent examination of the Patent Office file concerning plaintiff's patent revealed

that the attachments were missing. When plaintiff's counsel requested from defendant's counsel a stipulation that plaintiff's submission to the Patent Office contained these attachments and that the parties had no reason to believe that these documents did not actually come to the attention of Patent Examiner Dunkins, that request was denied. Somewhat later, defendant's counsel indicated that defendant would not stipulate anything concerning Mr. Dunkins and the prior art "Group 45" desk. Accordingly, plaintiff noticed the deposition at issue, in order to establish that the Examiner did, in fact, consider the materials concerning the "Group 45" desk.

In its motion for summary judgment, defendant noted specifically that the Examiner had not considered the Golden patent, but defendant did not assert that he had not considered defendant's own "Group 45" design. Thus, in seeking to vacate the notice of deposition, defendant contended that the deposition "relate[d] to a matter which is not raised as an issue" in the summary judgment motion and was therefore "unnecessary." And, in its reply to plaintiff's opposition to the motion to vacate, defendant made explicit what, it contends, was implicit in its previous papers: ". . . defendant's Motion for Summary Judgment assumes arguendo that the Examiner was aware of defendant's Group 45 desk." Thus, defendant has explicitly conceded that fact which plaintiff seeks to establish by deposing Examiner Dunkins.

▮▮▮ There is apparently no question that it is relevant, for purposes of deciding whether plaintiff's patent is void for obviousness, to know whether the Examiner considered the "Group 45" design. The only question on this motion is whether the fact that defendant has not sought to raise that factual issue and, in fact, concedes it for this purpose, constitutes "good cause" such as to warrant the grant of a protective order. The court is of the opinion that defendant's belated concession constitutes "good cause".

fact that someone takes the trouble to copy another's design—whether patented or not—is

certainly persuasive circumstantial evidence that the copied design is not an obvious one.

Rule 26(c) provides, *inter alia*, that a protective order may be granted to protect a party or person from "undue burden or expense". It seems difficult to imagine a more unnecessary proceeding than a deposition with the sole purpose of establishing a fact which is already conceded, or at least assumed, *arguendo*, for purposes of the only question for which it is relevant. Therefore, the court grants defendant's motion to vacate plaintiff's notice of deposition directed to Examiner Dunkins, but only on the express condition that the parties accept, for purposes of this action, that Mr. Dunkins, in considering plaintiff's patent application, examined and was aware of those materials concerning defendant's "Group 45" desk which are attached as part of Exhibit D to Plaintiff's Opposition to Defendant's Motion for Protective Order filed on May 6, 1975. (Exhibit D is plaintiff's counsel's file copy of the amendment and attachments mailed to the Patent Office and, presumably, received at the office on August 30, 1971.)

It is true that Rule 26(c) does not make explicit provision for an order conditionally *denying* discovery. However, it does provide that the court may make "any order which justice requires", and Professor Moore interprets that phrase to indicate that "the enumeration of specific orders that follows is merely illustrative of the general discretion vested in the court to protect the parties from abuses that might otherwise arise. . . ." 4 J. Moore, *Federal Practice* ¶ 26.78, at 26–554 (2d Ed. 1975).

### Plaintiff's Motion for Continuance

In view of the fact that the court has decided to allow plaintiff to proceed with its depositions of Messrs. Schneiderman, Tischio, and Silver, the remaining question is whether plaintiff is entitled to its requested continuance of defendant's summary judgment motion until the depositions have been completed.

Rule 56(f) provides as follows: "Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make·such other order as is just."

■ Defendant objects, first, that plaintiff's motion for continuance is improper, in that such an application may be made only *after* the party opposing the motion has submitted its opposition papers, if it does not make the application in the opposition papers themselves. The only authority cited for this proposition is a section of Professor Moore's treatise, which appears to indicate that such an order of filing would be proper. 6 J. Moore, *Federal Practice* ¶ 56.-24, at 56–1421–2 (2d Ed.1976). However, that section does not discuss any policy reason which would preclude filing of the Rule 56(f) affidavit prior to filing of the response when, as here, the proposed basis of the opposition to the motion is made perfectly clear by the affidavit and the material sought to be discovered during the continuance is germane to the defense. Moreover, such a practice has been previously countenanced in the federal courts. *Shultz, et al. v. Manufacturers & Traders Trust Co., et al.*, 32 F.Supp. 120 (W.D.N.Y.1940). The court considers plaintiff's motion to be properly made at this juncture.

■ Contrary to defendant's assertions, it appears to the court that the material which plaintiff seeks to discover is neither cumulative of other evidence nor speculative. As previously indicated, there has as yet been no discovery in this case. And, despite the strenuous denial of any copying by defendant's designer, the fact that plaintiff uncovered arguable indicia of copying by defendant in a related case lends support to its desire for discovery in this case.

The one case cited by defendant for the proposition that a continuance under Rule 56(f) may be denied where the discovery sought would be "useless" is readily distinguishable. In *Walpert v. Bart*, 280 F.Supp. 1006 (Md.1967), *aff'd*, 390 F.2d 877 (4th Cir.

1968), the District Court granted defendant's motion for summary judgment on the ground that plaintiff's claim was barred by laches, and denied plaintiff's request for further discovery under Rule 56(f). However, the court did so only after the plaintiff had responded to the motion for summary judgment and, presumably, had addressed the laches question raised by the defendant. In *Walpert*, plaintiff's request for further discovery apparently was not concerned with evidence bearing on the laches question, and the facts and legal arguments on that issue were fully before the court. In the instant case, however, plaintiff has not yet submitted any evidentiary affidavits in opposition to defendant's motion, since it lacks the facts on which to base such response. Indeed, the closer the similarities between plaintiff's patented desk and the prior art, the more "essential" it is to plaintiff's defense of its patent that it investigate the "secondary" indicia of obviousness.

Accordingly, plaintiff's motion for a continuance of the return date of defendant's motion for summary judgment is granted. Plaintiff must complete its depositions of Messrs. Schneiderman, Tischio, and Silver no later than July 12, 1976. Its response to defendant's motion for summary judgment must be filed with the court no later than July 26, 1976.

### Plaintiff's Request for an Award of Costs

Plaintiff has asked, pursuant to Rules 26(c) and 37(a)(4), that defendant be ordered to pay plaintiff's costs, including reasonable attorneys' fees, incurred in opposing defendant's two motions to vacate the notices of depositions.

Rule 26(c) provides, in part, that the provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to a motion for a protective order. In turn, Rule 37(a)(4), as amended in 1970, reads as follows: "If the motion is granted, the court shall, after opportunity for hearing, require the party . . . whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust." If the motion is denied, the Rule similarly requires that the "moving party or the attorney advising the motion or both of them" pay their opponent's expenses, unless it appears that there was substantial justification for the motion or other sufficient reason. Finally, "[i]f the motion is granted in part and denied in part, the court may apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner."

Since the Rule is phrased in mandatory terms, it is incumbent upon the court to make an award of costs unless the conduct of the losing party is found to be substantially justified. In discerning the meaning of this relatively new provision, the Notes of the Advisory Committee on the Rules of Civil Procedure offer some guidance:

"On many occasions, to be sure, the dispute over discovery between the parties is genuine, though ultimately resolved one way or the other by the court. In such cases, the losing party is substantially justified in carrying the matter to court. But the rules should deter the abuse implicit in carrying or forcing a discovery dispute to court when no genuine dispute exists. And the potential or actual imposition of expenses is virtually the sole formal sanction in the rules to deter a party from pressing to a court hearing frivolous requests for or objections to discovery."

\* \* \* \* \* \*

"The proposed change provides in effect that expenses should ordinarily be awarded unless a court finds that the losing party acted justifiably in carrying his point to court. At the same time, a necessary flexibility is maintained, since the court retains the power to find that other circumstances make an award of expenses unjust—as where the prevailing

party also acted unjustifiably. The amendment does not significantly narrow the discretion of the court, but rather presses the court to address itself to abusive practices. The present provision that expenses may be imposed upon either the party or his attorney or both is unchanged. . . ."

 Thus, the presence of a genuine dispute over a legal issue ordinarily indicates that the losing party on the motion is "substantially justified" in his opposition, and an award of costs to the prevailing party is unwarranted. In this case, the dispute concerning the relevancy of the information sought from Messrs. Schneiderman, Tischio, and Silver appears to the court sufficiently substantial to preclude an award of costs to the plaintiff, absent other compelling circumstances.

 Plaintiff asserts, however, that the conduct of defendant justifies such an award in this case. In the first place, plaintiff implies that defendant or its counsel instigated or facilitated the departure of Mr. Silver from the New York City area to Florida in order to avoid or impede plaintiff's efforts to take his deposition. The court need not resolve the conflicting hearsay affidavit accounts of the precise date on which Mr. Silver left New York, because it further appears from defendant's counsel's affidavits that Mr. Silver retired from defendant corporation in 1972 and has been outside its control since that time. Moreover, no employee of defendant, including its outside counsel, contacted Mr. Silver concerning his noticed deposition until March 17, 1975, the date Mr. Silver was served with the subpoena, some nine days after Mr. Silver allegedly left New York to avoid it. Since defendant did not procure his departure from New York, there is no basis here for an award of either attorneys'

fees or the expenses of Mr. Silver's deposition in Florida.

Plaintiff's second contention concerning defendant's motion to vacate the Schneiderman, Tischio, and Silver depositions is that defendant failed to comply with Rule 9(f) of the General Rules of this District.[2] Since the affidavits filed by the parties' counsel are in substantial agreement as to the course of events which preceded the filing of defendant's motion for a protective order, no hearing is necessary to resolve this issue.

On March 5, 1975, plaintiff's counsel wrote to defendant's counsel, informing him that plaintiff intended to rely upon commercial success in opposing defendant's motion for summary judgment, and requested certain dates and information concerning sales volume of the accused desks. The letter also informed defendant that, if the requested information were not forthcoming, plaintiff would have no alternative but to immediately depose Messrs. Schneiderman, Tischio, Silver, or whomever possessed the required information. Plaintiff's counsel also contacted defendant's counsel by telephone on the same day, and was informed that the latter was working on the matters raised in the letter.

On the following day, plaintiff's counsel received a letter from defense counsel containing an offer to stipulate "the issue of commercial success" and "that defendant made and sold each of the accused desks after the date of the design patent in suit and prior to the date of the commencement of this lawsuit." Since plaintiff's counsel deemed that stipulation an inadequate response to his previous request, he delivered to defense counsel on March 7 the notices of deposition here at issue along with a cover letter. In a telephone conversation between counsel later on the same date, defense counsel indicated that he would rec-

---

**2.** Rule 9(f) provides that "[n]o motion [made pursuant to Rules 26 through 37, Fed.R.Civ.P.] shall be heard unless counsel for the moving party files with the court at or prior to the argument an affidavit certifying that he has conferred with counsel for the opposing party in an effort in good faith to resolve by agreement the issues raised by the motion without the intervention of the court and has been unable to reach such an agreement. If part of the issues raised by motion have been resolved by agreement the affidavit shall specify the issues so resolved and the issues remaining unresolved."

ommend to Messrs. Silver and Tischio that they appear voluntarily for deposition, but that they were not within defendant's control, as they were no longer its employees. Defense counsel apparently advised plaintiff's counsel that he would provide the specific dates requested by the letter of March 5, and that, in his view, the depositions would be unnecessary. However, plaintiff's counsel indicated that on further reflection, he had decided that other information should be obtained from the individuals in question to deal with issues raised by the motion for summary judgment. At no time in this conversation or at any other time prior to filing defendant's motion for a protective order on March 11 did defense counsel object to the propriety of deposing these individuals, nor did he discuss his legal basis for doing so.

In filing his motion for a protective order, defense counsel indicated that he felt that the conversations and correspondence of March 5–7 constituted adequate conference with opposing counsel within the meaning of Rule 9(f). However, he also indicated in a later affidavit that he again conferred, *after* filing the motion, on March 17, in order to determine if there was any possibility of resolving by agreement the issues raised by the motion without the intervention of the court. No agreement was reached at that time.

■ Plaintiff contends that the communications of March 5–7 do not constitute adequate consultation within the meaning of Rule 9(f). There is a certain ambiguity in the wording of the Rule, in that it provides that no discovery motion "shall be heard" unless the required affidavit detailing efforts to settle the issues raised by the motion is filed with the court "at or prior to the argument" on the motion.[3] That wording is susceptible of a construction according to which the moving party would only have to confer with his adversary *after* he filed his motion, but before the motion is either heard or decided on submission.

However, it accords more with the purpose of the rule, i. e., to encourage informal, extrajudicial settlement of discovery disputes, to require that the parties or their attorneys make some effort to resolve their differences over legal issues without invoking judicial assistance, particularly under Rules 26 and 37. Accordingly, it appears to the court that defense counsel failed to comply with Rule 9(f) in its communications of March 5–7. While defense counsel attempted to make concessions which would obviate the need for the depositions, he completely failed to even inform plaintiff's counsel that he considered the notices of deposition improper, much less reveal the legal basis for his contention.

■ Although defense counsel's action in failing to discuss these issues prior to filing his motion for a protective order appears to be violative of Rule 9(f), the court does not feel that this dereliction warrants an assessment of costs against either defendant or its counsel in this particular situation. Unlike many other discovery disputes which turn on matters of convenience, time, location, etc. which can often be resolved by consultation and compromise between counsel, the dispute concerning the depositions of Messrs. Schneiderman, Tischio, and Silver is strictly one of law, i. e., the relevance of the information sought to be discovered. The papers filed concerning the motion reveal a continuing, unyielding dispute between the parties, which apparently could not be resolved even by defense counsel's belated consultation on March 17. It makes little sense to penalize defendant or its counsel by assessing costs when there is no reason to believe that resolution of the legal dispute would have been facilitated by timely consultation prior to filing of defendant's motion. Accordingly, plaintiff's motion for assessment of its costs on the first motion for a protective order is denied.

The entire dispute concerning plaintiff's notice to depose Examiner Dunkins is a different story, however. This is a matter

---

**3.** Since this court takes such motions on submission primarily, the "hearing" may be construed to refer to the return date of the motion.

which should have been handled completely out of court, and which bespeaks a total lack of communication between the parties. It was precisely to avoid this sort of needless drain on the limited judicial resources of this District that Rule 9(f) was enacted.

A brief recapitulation of the chronology of this dispute will place it in perspective. By letter dated April 1, 1975, plaintiff's counsel informed defense counsel that the materials which he had previously submitted by letter to the Patent Office concerning defendant's "Group 45" desk were apparently missing from the Patent Office file regarding the patent here in suit. He also asked that defense counsel stipulate that the parties had no reason to believe that those materials did not actually come to the attention of Examiner Dunkins. On April 3, defense counsel informed plaintiff's counsel by telephone that he would not agree to the proposed stipulation. In fact, he later informed plaintiff's counsel that he would not stipulate anything regarding Mr. Dunkins and the "Group 45" desk.

After making the requisite arrangements, plaintiff's counsel served defense counsel on April 22 with a notice of deposition of Mr. Dunkins. Subsequently, on April 29, defense counsel filed his motion to vacate the notice of deposition, which was scheduled for May 8. On May 6, the return date of the motion to vacate, and the same date on which plaintiff filed its opposition to the motion, defense counsel telephoned plaintiff's counsel in an unsuccessful attempt to resolve the issues of the motion and to comply with Rule 9(f). On that same day, defendant filed a brief reply memorandum in which it explicitly said that it assumed, *arguendo*, that Examiner Dunkins had been aware of defendant's "Group 45" desk when he had considered plaintiff's patent application.

Thus, after plaintiff had been forced to incur the expenses of arranging for Mr. Dunkins' deposition and of opposing defendant's motion to vacate, defendant belatedly conceded, or at least assumed for the only purpose for which it was relevant, precisely that fact which it had refused to stipulate a few weeks earlier. It is true, as defendant argues, that neither its motion for summary judgment nor its motion for a protective order explicitly denied that the Patent Examiner had considered the "Group 45" materials. However, it is also true that plaintiff was entitled to affirmatively rely on the fact that Mr. Dunkins was entitled to affirmatively rely on the fact that Mr. Dunkins had considered that purportedly relevant prior art, and the strengthened presumption of validity following therefrom, in opposing the motion for summary judgment. As plaintiff points out, when defense counsel first refused to stipulate that the Examiner had seen the material, and then moved to vacate the notice of his deposition, plaintiff could reasonably have believed that defendant intended to contest that fact.

 This is a somewhat anomalous situation, in that it appears to be defendant's conduct which necessitated the notice of deposition which it later moved to vacate. The fact that defendant prevailed on its motion was due solely to its own belated concession of the fact sought to be discovered. Accordingly, it appears appropriate that defendant should bear the costs, including reasonable attorneys' fees, which plaintiff incurred in opposing defendant's motion to vacate the notice of deposition directed to Examiner Dunkins. While Rule 37(a)(4) provides that costs shall be assessed against the *losing* party, that provision is clearly designed to compensate that party whose position has legal merit, and, in this instance, plaintiff would be entitled to the discovery it seeks if the discovery had not been rendered moot by defendant's own act.

This matter is referred to Magistrate Hartenstine to determine the amount of plaintiff's costs and reasonable attorneys' fees incurred in opposing defendant's motion to vacate the deposition of Examiner Dunkins.